IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| TERESA MERRIWEATHER, )<br>)<br>Plaintiff, )<br>)<br>)<br>v. )<br>)<br>)<br>SHELTER HOUSE, )<br>)<br>)<br>)<br>Defendant. )<br>) | Civil Action No. 1-16-cv-00566 |

**MEMORANDUM OPINION**

THIS MATTER comes before the Court on Defendant Shelter House's ("Defendant") Motion for Summary Judgment. Plaintiff Teresa Merriweather ("Plaintiff") is an African-American female who worked at Shelter House for approximately seven weeks. Plaintiff alleges that she was subjected to discrimination and retaliation on the basis of her race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

Defendant is a non-profit organization that provides housing and social services to female victims of domestic violence and human trafficking. Defendant contracts with Fairfax County, Virginia, to run shelters throughout the county, including Artemis House, the facility where Plaintiff worked.

In October 2014, Plaintiff accepted a position at Shelter House as an On-Call Residential Coordinator after having interviewed with Stephanie White, Director of Human Resources, and Danielle Colon, then-Director of Artemis House. Plaintiff's first day of employment was October 27, 2014. In this position, Plaintiff worked on an as-needed basis to provide coverage to full-time and part-time Residential Coordinators who were unable to work their assigned shifts for any reason. Plaintiff reported directly to Jasmine Barnes, who was the Artemis House Residential Supervisor.

Plaintiff alleges that Defendant unlawfully discriminated against her because she is African-American by pointing to three specific events. First, Plaintiff alleges that she was required to shred internal shift logs when a Caucasian employee was not required to do so. Defendant maintained paper copies of electronic shift logs that detailed activities and events of note that occurred on a given shift. Plaintiff claims that Ms. Barnes told an African-American coworker that she and Plaintiff should shred shift logs, while a Caucasian employee was not told to do so.

Second, Plaintiff alleges that she was denied her requests to work the morning shift when a Caucasian employee was given preference to work the morning shift. When she first started, Plaintiff was scheduled to work shifts when Ms. Barnes could

2

provide her on-the-job training, or to shadow other Residential Coordinators. Plaintiff requested the morning shift, but her request was denied. Plaintiff claims that this denial was based on her race, and that another employee, who was Caucasian, was given preference to work the morning shift.

Third, Plaintiff claims that she was written up for making inappropriate comments, while her Caucasian second-level supervisor, Ms. Colon, was not written up for an inappropriate comment that Plaintiff alleges Ms. Colon made. In mid-November 2014, Ms. Barnes received a complaint that Plaintiff and another employee engaged in an inappropriate conversation. As a result, Ms. Barnes and Ms. Colon met with Plaintiff on November 20, 2014, and advised her that her comments were in violation of Shelter House Core Values. The counseling was memorialized in a written summary. Plaintiff claims that this write-up was made because of her race, and that Ms. Colon made a comment that Plaintiff believed was inappropriate and did not receive a write-up.

Plaintiff further claims that Defendant retaliated against her because her application for a Full-Time Residential Coordinator position was denied after she complained about race discrimination, and because Defendant terminated her based on her complaint of race discrimination. On November 6, 2014, while she was still being trained, Plaintiff applied for a

3

vacant Full-Time Residential Coordinator position. In the days following Plaintiff's counseling for inappropriate behavior, Plaintiff began complaining about Shelter House's policies and procedures. Plaintiff met with Ms. White on December 1, 2014 to discuss these complaints, and she told Ms. White that she was subjected to race discrimination by Ms. Colon. On December 5, 2015, Plaintiff met with Ms. White and Ms. Colon to address Plaintiff's allegations, and Plaintiff noted that she was unsure she wanted to continue working at Shelter House. At the conclusion of this meeting, Plaintiff was told that because of numerous concerns about Plaintiff's job performance, professionalism, and behavior, and because Plaintiff expressed doubt of her desire to continue her employment, she would not be considered for the Full-Time Residential Coordinator position for which she had applied.

At Plaintiff's request, Shelter House investigated the concerns that she raised at the December 1 and December 5, 2014 meetings and determined that no further investigation was necessary. Plaintiff requested a meeting with Shelter House's Executive Director, Joseph Meyer. The meeting was rescheduled three times because of Plaintiff's conflicts, and Plaintiff ultimately failed to attend the meeting without cancelling in advance. In light of Plaintiff's repeated cancellations, along with the concerns that Shelter House had expressed about

4

Plaintiff's performance at the December 1 and December 5, 2014 meetings, Plaintiff's employment was terminated on December 17, 2014. Plaintiff's termination letter stated that she was terminated for insubordination, job performance, inappropriate workplace interaction, not exemplifying Shelter House Core Values, and disrespect of management.

Plaintiff received a Notice of Right to Sue from the Equal Employment Opportunity Commission on February 23, 2016. Plaintiff filed this action on May 23, 2016, alleging race discrimination and retaliation in a one-count complaint. Following discovery, Defendant now moves for summary judgment.

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if the pleadings and evidence before the Court show no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, the Court views the facts in the light most favorable to the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made, the opposing party has the burden of showing that a genuine dispute of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

Because Plaintiff has alleged no direct evidence of discrimination, she must proceed under the burden-shifting approach under the *McDonnell Douglas* "pretext" framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973); Holland v. Wash. Homes, Inc., 487 F.3d 208, 214 (4th Cir. 2007). Under *McDonnell Douglas*, a plaintiff must first state a prima facie case of discrimination. See Laber v. Harvey, 438 F.3d 404, 430 (4th Cir. 2006). If the plaintiff succeeds in stating a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its adverse employment decision. Id. If the defendant satisfies this showing, the plaintiff must show that the articulated reason is a pretext for discrimination. Id. at 430-31.

Plaintiff fails to establish a prima facie claim of discrimination. To establish a prima facie claim of race discrimination, a plaintiff must show that: (1) she is a member of a protected class; (2) she has satisfactory job performance; (3) she was subjected to an adverse employment action; and (4) that similarly situated employees outside her class received more favorable treatment, or, if the plaintiff was terminated, that the position was filled by similarly qualified individuals outside her protected class. McDonnell Douglas, 411 U.S. at 802; Holland, 487 F.3d at 214.

6

First, Plaintiff cannot meet the third element of a prima facie case. Plaintiff alleges that Shelter House unlawfully discriminated against her because she is African-American by requiring her to shred shift logs, denying her request to work the morning shift, and counseling her for making an inappropriate comment. These incidents do not constitute adverse employment actions. An adverse employment action is one that adversely affects the terms, conditions, or benefits of the plaintiff's employment, such that the employee suffers some significant detrimental effect from the action in question. Holland, 487 F.3d at 219. Plaintiff cannot show that she suffered a demotion, pay decrease, or performance-based discipline that resulted from shredding shift logs, not working the morning shift, and being written up. See James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 377 (4th Cir. 2004).

Although Plaintiff alleges that shredding was an illegal activity, Plaintiff relies solely on her own belief to reach this conclusion and cannot show that engaging in this activity was in fact illegal or affected her employment in any way. Furthermore, Plaintiff's request to work the morning shift did not result in a demonstrable difference in work duties, pay, or responsibilities. The mere fact that a job assignment is less appealing to an employee does not constitute an adverse employment action; there must be some detrimental effect.

7

Holland, 487 F.3d at 219. Plaintiff has not shown that being denied the morning shift had such an effect. Last, Plaintiff's verbal counseling for making an inappropriate comment, which was memorialized in a written notice, did not adversely affect the tangible terms of Plaintiff's employment. Rather, the counseling identified Plaintiff's behavior as not complying with Shelter House's conduct and professionalism expectations and reminded Plaintiff that she should comply with such expectations. Written and verbal reprimands do not automatically constitute an "adverse action" for Title VII discrimination claims. See Adams v. Anne Arundel Cty. Pub. Sch., 789 F.3d 422, 428-29, 431 (4th Cir. 2015). Because the incidents on which Plaintiff relies to allege racial discrimination did not adversely affect Plaintiff's employment, Plaintiff fails to meet the third element of a prima facie case of discrimination.

Furthermore, Plaintiff cannot meet the fourth element of a prima facie case because she fails to present valid comparator evidence showing that similarly situated employees were treated more favorably. Plaintiff alleges that being counseled for making an inappropriate comment constituted race discrimination because Ms. Colon, Plaintiff's superior and Director of Artemis House, was not disciplined for making inappropriate comments or for other violations Plaintiff perceived to exist. However, Ms.

8

Colon is not similarly situated to Plaintiff and cannot be used to support a disparate treatment claim.

Employees are similarly situated where they deal with the same supervisor, are subject to the same standards, and engage in the same conduct "without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Haywood v. Locke, 387 F. App'x 355, 359 (4th Cir. 2010) (internal citation omitted). Ms. Colon was Plaintiff's second-level supervisor and director of Artemis House; Plaintiff was an On-Call Residential Coordinator. Not only were the two women's job titles different, Ms. Colon's position in the supervisory chain differed from that of Plaintiff. Though a comparator need not be an exact match, the only similarities between Plaintiff and Ms. Colon is that they were both employed by the same entity. See id. at 359-60. As a result, Ms. Colon is not similarly situated to Plaintiff, and Plaintiff fails to meet the fourth element of a prima facie case. As a result, Plaintiff's race discrimination claim fails, and Defendant is entitled to summary judgment on this claim.

Plaintiff also claims that Defendant engaged in unlawful retaliation in violation of Title VII when she was denied a promotion and when she was terminated. To establish a prima facie case of retaliation, Plaintiff must show that (1) she engaged in protected activity; (2) she suffered an adverse

9

employment action; and (3) there is a causal link between the protected activity and the employment action. <u>Coleman v. Md. Ct. of Appeals</u>, 626 F.3d 187, 191 (4th Cir. 2010). Although status-based discrimination claims only require that unlawful discrimination be a "motivating factor" for an employer's actions, retaliation claims are subject to a higher "but for" causation standard, under which Plaintiff must show that the causal link between her protected activity and her removal is so close that the removal would not have occurred but for the protected activity. <u>See</u> <u>Univ. of Tex. Sw. Med. Ctr. v. Nassar</u>, 133 S.Ct. 2517, 2533 (2013).

Plaintiff fails to establish a prima facie case for retaliation because she cannot establish that Defendant's reasons for denying her a promotion and ultimately terminating her were pretextual.[1] Plaintiff claims that Defendant retaliated against her when she was informed that she would not be considered for the Full-Time Residential Coordinator position for which she had applied. However, the evidence shows that Defendant denied her application because her job performance and behavior during the brief time she worked for the Defendant raised concerns regarding her suitability for the job. These concerns included, among others, problems with Plaintiff's

---

[1] The *McDonnell Douglas* framework demands proof at the pretext stage that retaliation was a but-for cause of a challenged adverse employment action. <u>Foster v. Univ. of Md.-E. Shore</u>, 787 F.3d 243, 252 (4th Cir. 2015).

professionalism and complaints about Plaintiff from clients. Plaintiff learned about these concerns during the November 20, 2014 verbal counseling, in the December 1, 2014 meeting with Ms. White, and in the December 5, 2014 meeting with Ms. White and Ms. Colon.

Furthermore, Plaintiff herself expressed doubt that she wished to continue working at Shelter House at the December 5, 2014 meeting. For these reasons, when the December 5 meeting ended, Plaintiff was informed that she would not be considered for the position. Defendant has presented legitimate, non-discriminatory and non-retaliatory reasons for not promoting Plaintiff, and Plaintiff does not present evidence that these legitimate reasons were merely pretext.

Likewise, Plaintiff cannot show that Defendant's decision to terminate her was pretextual. Plaintiff claims that she was terminated because she complained about race discrimination. However, Defendant has presented evidence that Plaintiff was terminated for insubordinate and unacceptable behavior. Plaintiff's supervisors met with Plaintiff to address job performance concerns on at least three occasions—November 20, December 1, and December 5, 2014. When Plaintiff requested further investigation regarding her complaints about Ms. Colon, Defendant complied with Plaintiff's requests. When Plaintiff asked to meet with the Shelter House Executive Director, he

11

agreed to meet with her. The meeting was rescheduled three times because of Plaintiff's conflicts, and Plaintiff ultimately did not attend the meeting. When Plaintiff was terminated, Defendant memorialized the reasons for her termination in a letter, citing insubordination, job performance, inappropriate workplace interaction, not exemplifying Defendant's core values, and disrespect of management as reasons for the termination.

Plaintiff has only provided her unsupported belief that her termination was retaliatory because she disagreed with her termination and the grounds cited to support it. However, a plaintiff must present evidence that an employer's assessment of the employee's performance is dishonest or not the real reason for termination. Hawkins v. PepsiCo, Inc., 203 F.3d 274, 280-81 (4th Cir. 2000). Plaintiff has not done so here. As a result, because Plaintiff cannot show that her retaliation was the "but for" cause of her termination, Plaintiff's retaliation claim fails, and Defendant is entitled to summary judgment on this claim.

For the aforementioned reasons, this Court finds that summary judgment should be granted in favor of the Defendant, and this case should be dismissed. An appropriate order shall issue.

_____
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
January 27, 2017

13